NO. 3037

## AMENDMENT I TO HOUSE BILL NO. 23 HELD

### UNCONSTITUTIONAL

Amendment 1 to H. B. No. 23 is unconstitutional be-
cause it deprives both the landlord and the tenant
of their property without due process of law; because
it deprives the landlord and the tenant of the right
to contract with each other, and impairs contracts
already made; and because it provides for compulsory
arbitration.

===================================================================

OFFICE OF THE ATTORNEY GENERAL

February 16, 1939

Hon. Bailey B. Ragsdale, Chairman
Committee on Agriculture
House of Representatives
Austin, Texas

Dear Sir:

                    Opinion No. 0-276
                    Re:  Opinion as to constitutionality of
                         Amendment 1 to House Bill No. 23.

        Your request for an opinion as to the constitutionality

of Amendment 1 to House Bill No. 23 has been received by this

office.  We have made a very careful and thorough examination

thereof and have been greatly assisted by the brief and other

documents submitted by your committee in connection therewith.

We wish to express our appreciation of this assistance from your

committee.

        There are some twenty sections in the bill.  We have

limited our opinion to certain sections which we believe are

controlling.

        Subdivision (f) of Section 3 defines the meaning of the

words, "habitable dwelling" and subdivision (h) of said Section

3 defines what improvements the tenant may put on the land with-

out the consent of the landlord.

        Section 5 of the bill provides that if the tenant has

placed any improvements on the property he shall, at the time

he leaves the farm, be entitled to be compensated for all of
the improvements he has placed thereon. These three sections
of the bill, when taken together, will authorize the tenant to
put his own construction and ideas in force as to what he con-
strues "habitable dwelling" to mean, and as to what he thinks
will constitute a weatherproof building and adequate screens
and necessary toilet and sanitary water supply. It constitutes
him a jury and a court, and deprives the landowner of his right
to be consulted relative thereto. The above provisions, when
taken together, we think are clearly unconstitutional, and vio-
late both the State and Federal constitutions, which provide that
no person shall be deprived of his property except by due pro-
cess of law.

The Supreme Court of Texas, in the case of Travelers
Insurance Co. vs. Marshall, 76 S. W. (2nd) 1007, held that the
moratorium law was unconstitutional because it deprived persons
of their property without due process.

The Supreme Court of the United States, in Schechter
Poultry Corpn. vs. United States, 295 U. S. 495, held the N.R.A.
unconstitutional, and held that the laborers were not engaged
in interstate commerce and therefore that neither Congress nor
the President had a right to determine the wages that should be
received by them. Judge Hughes, in writing the opinion, used
this pertinent statement:

"Extraordinary conditions do not create or en-
large constitutional powers."

In Smith vs. State, 47 S. W. (2nd) 642 (Cotton Control
Act), the Court held said Act unconstitutional because it de-
prived the owner of land, as well as the tenant, of the right
to contract with each other, and impaired contracts already made.

Section 7 of the bill provides in effect that if a ten-
ant leaves a farm on his own volition or at the request and demand
of the landlord, he is entitled to reimbursement for whatever

-2-

he may lose by reason of the "disturbance" -- meaning thereby his loss occasioned by his leaving the farm, and fixes the amount of said loss at not more than one year's rent.

Subdivision (c) of said Section 7 makes the amount of this loss range from one-fourth of a year's rental to not exceeding one year's rental so far as the tenant is concerned; and the landlord would be entitled to compensation from the tenant not exceeding one half of a year's rent, because the tenant saw fit to move.

We believe that this section is unconstitutional for the same reasons and under the same authorities cited in connection with Section 5 above. This section makes a distinction between the damage accruing to the tenant and that accruing to the landlord, giving a tenant a right to twice the amount of damage as that recoverable by the landlord. It would prohibit both the landlord and the tenant from exercising their constitutional rights to make such contracts, upon such terms, and for such length of time, as they might desire. Under the provisions of this section the landlord could not remove a tenant; neither could a tenant change his location, without each of them laying themselves liable for damages. It therefore deprives both the landlord and the tenant of the right of property without due process.

Section 8 of the bill as submitted is unconstitutional, because it provides that the landlord must give to the tenant rent-free ground on which the tenant can produce sufficient feed, both vegetable and animal, for the subsistance of himself and his family. The effect of this section would require a landlord to give to the tenant, without any compensation or reward, so much of the landlord's farm as might be required to enable the tenant to make a living and support both himself and his family. Said section is further objectionable in that there is no way provided to determine the amount of land that the landlord must give to the tenant rent-free.

Section 9 of the bill provides the method by which the rentals paid by the tenant shall be determined, and requires that if the landlord wants to increase the rental or the tenant desires to

-3-

decrease the rental, it must be submitted to a board of arbitration, and provides that if the landlord will not accept the rental fixed by the board of arbitrators, the tenant may then remove from the land and the landlord must pay him for all the improvements he has placed thereon, whether with or without the landlord's consent, and also pay the tenant his loss occasioned by the law, which under Section 7 above is fixed from one-fourth to an entire year's rental from the land. This section, we think, is unconstitutional because it prohibits the right of contract, and forces a landlord to make a contract affecting his individual property, and thereby deprives him of his property without due process of law.

Section 11 of the bill makes it mandatory to submit all disputes between landlord and tenant to a Board of Arbitration, composed of one arbitrator selected by the landlord, one by the tenant, and one by these two; or if the parties will not appoint the arbitrators, the County Judge shall do so. This section further provides that after the dispute between the landlord and the tenant has been submitted to a board of arbitrators, either party may appeal to the courts for redress.

We think this section is unconstitutional insofar as it makes it compulsory upon the parties to submit their differences to a board of arbitrators. We now have a statute, being Article 224, Revised Statutes, which authorizes parties by agreement to submit their differences to arbitration. The courts have upheld the constitutionality of the arbitration awards where the parties have agreed to submit their differences to such boards.

In Wolff Packing Co. vs. Court of Industrial Relations, 262 U. S. 522, the Supreme Court of the United States held that the act of the Legislature in Kansas creating the Court of Industrial Relationships in Kansas, which required the packing company to submit the question of wages it should pay to a board of arbitrators, was void because it violated the Fourteenth

Amendment to the Federal Constitution and violated the Bill of Rights which guaranteed that no person shall be deprived of his property without due process of law.

In Re Bill Relating to Arbitration, 21 Pac. 474, the Supreme Court of Colorado held that the Legislature could not pass a compulsory arbitration bill. In St. Louis I. M. & S. Ry. Co. vs. Williams, 5 S. W. 883 (Ark.) the Supreme Court of Arkansas held an act unconstitutional which provided that the railroads must submit all small claims to a board of arbitration before a suit could be filed thereon, on the ground that it deprived the railway company of its property without due process and denied it the statutory right to trial by jury.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

George W. Barcus
Assistant

GWB:FMP

This opinion has been considered in conference, approved, and ordered recorded.

GERALD C. MANN
ATTORNEY GENERAL OF TEXAS